
Minute Order Form (

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 128 - 4 | **DATE** | 7/21/2000 |
| **CASE TITLE** | USA vs. NAM TIM CHAN | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum opinion and order: Defendant Nam Chan's motion to suppress certain statement made by him subsequent to his arrest is granted. All statements made by the defendant prior to the admonishment of his constitutional rights as required by Miranda vs. Arizona are suppressed.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JUL 25 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | CG  courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

United States of America,
        Plaintiff,

v.                          File No 00 Cr 128

Shou Mei, Nam Tim Chan, et al
        Defendants.

DOCKETED JUL 2 5 2000

## MEMORANDUM OPINION AND ORDER

Before us is defendant Nam Tin Chan's motion to suppress certain statements made by him subsequent to his arrest. Having heard the testimony, the arguments of counsel and examined the exhibits, affidavits and written submissions, the court finds as follows:

We find the testimony of Agent Perry Woo describing the sequence of the events substantially credible. Defendant Chan's testimony was somewhat fragmented and slightly contradicted his affidavit. In addition he testified he was unable to remember certain details of the events during his arrest and interview. Agent Woo, on the other hand, testified fairly consistently and in much more detail as to the events of the post arrest interview of the defendant. In addition, agent Woo's testimony is substantially consistent with the written statement of facts submitted in the government's response to the motion to suppress. That agent Woo's cryptic notes of only several lines would not

1

contain all of the information in the subsequent typewritten submission is not surprising. Importantly, there were no significant contradictions. Nor do I find convincing defendant's theory that the indecipherable markings on the margin of agent Woo's notes stand for "defendant questioned" . First, there is only defense counsel's theorizing in support of his interpretation, no corroboration exists. Second, the theory directly contradicts the agent's sworn testimony. Third, counsel bases his theory in part, at least, on his belief that the mark which the agent claims is the letter "t" does not match any of the other "t" letters in the body of the agent's notes. A close look reveals that this is not true. There are in fact several letters "t" in the body of the notes which look very much like the mark which the agent claims is a "t" in the margin. Finally, we find that the use of the word "interview" in Agent Leary's report does not indicate interrogation. It is clear from a review of the report that Agent Leary's explanation that he was simply following a format for reporting the events which included an initial declaration stating: "SA WOO AND THE INTERPRETER INTERVIEWED (NAME OF DEFENDANT)" is accurate. He then would go on to explain what happened when the agent spoke to the defendant. He used this format regardless of whether or not there was an actual asking of questions as one would expect in an interview. The report shows that he did in fact begin the description of what happened with each defendant with this same format regardless of whether or not questions were asked.

Special Agent Woo's testimony closely follows the facts as stated in Government's Response to Defendant Nam Tin Chan's Motion to Suppress. According to the recitation while Chan was in custody after his arrest in a room within the U.S. Secret Service Field Office, Agent Woo, speaking Cantonese, introduced himself and proceeded to inform Chan about the charges and evidence against him. Then, gesturing to the counterfeit cards[1] that had been seized from Chan, agent Woo informed Chan that his arrest was based on credit card violations, and that he was in trouble as it was a serious offense. Agent Woo informed Chan that the United States Secret Service was attempting to determine if he, Chan, was indeed the "dai lo", which in Chinese translates into "big boss."[2] Agent Woo then told the defendant that he would have an opportunity to talk later if he wished and if he chose to cooperate with the investigation agent Woo would inform the Assistant United States Attorney. Defendant Chan then interrupted agent Woo and stated that he was not the "dai lo" that he never used the credit cards and that he only picked up the cards after they were left behind at the house. At this point agent Woo interrupted Chan and advised him of his Miranda rights. After being advised of his Miranda rights defendant Chan then refused to make any further statements and requested

---

[1] Defendant has stipulated for purposes of the motion to suppress hearing only that the credit cards recovered from Chan are counterfeit.

[2] Chan testified that the agent told him "You are the big brother of China Town" as soon as he came into the room. And that the agent asked him if he knew that the credit cards were fake before giving him his *Miranda* warnings..

3

an attorney.

The question presented to the court is whether or not, given the above facts,[3] a custodial interrogation occurred so as to trigger the requirement that the defendant be advised of his right to remain silent as required by *Miranda vs. Arizona*. The parties agree that the issue is governed by the holding in *Rhode Island Vs. Innis*, 446 U.S. 291 (1980). The essence of that opinion is found in the court's language, relied upon by both sides, which states: "[T] he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Id.* at 300 -01. *Innis* also holds that, for *Miranda* purposes, "interrogation" may be defined as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that police would know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301. It is clear then, that the officer's words and actions must be looked at in their totality in order to determine whether or not together they are such as are reasonably likely to elicit an incriminating response from the suspect. Based upon the totality of the evidence we find that the officers words and conduct together and in sequence were such that the police would know that they were reasonably likely to elicit an incriminating response from the defendant.

---

[3] While Agent Woo's testimony is substantially as stated above, he did not use the exact words contained in the prosecution's statement of facts in its response to defendant's motion to suppress. The court's findings are based upon the agent's actual testimony during the evidentiary hearing.

4

The agent first informed the defendant of the reason for his arrest and the seriousness of the offense. He then informed him that the Secret Service was trying to determine if he (the defendant) is indeed the "dai lo". He then invited the defendant to cooperate with the investigation. Thus, the agent gave the defendant a motive for cooperating, told him precisely the information he was seeking and then, invited him to speak. Any reasonable person would expect such a sequence of communications to elicit a response. And that is, indeed, precisely what happened. That the defendant spoke in response to these communications and only because he was not previously advised of his rights is clear from the undisputed fact that once he was advised of his rights he immediately invoked his right to remain silent and requested an attorney. While advising the defendant of the seriousness of the charges and the evidence available against him is not, without more, custodial interrogation, following such an admonishment with an explicit explanation of the information the police seek and finally inviting the defendant to cooperate with the police in this regard by pointing out the benefits of doing so, all without first advising him of his right not to do so, does indeed lead to the reasonable likelihood that an in incriminating response will follow. The risk of running afoul of *Miranda* could, of course, easily have been avoided. All agent Woo needed to do was to advise the defendant of his rights before initiating this sequence of communications, or, at the very least, before inviting the defendant to cooperate. In making this determination we take into account the fact that the defendant is a foreign national who is not likely to

5

have known of his constitutional rights without being advised of such.[4] He is precisely the type of person who would require being informed of his rights. In addition, the language barrier may very well have left him feeling more vulnerable to elicitation of an incriminating statement. We note also that it was the officer who initiated the dialogue and that the officer's words were not a casual conversation overheard by the defendant or a conversation intended for someone else, but rather were directly aimed at the defendant.

For the reasons stated above, the motion to suppress is granted. All statements made by the defendant prior to the admonishment of his constitutional rights as required by *Miranda vs. Arizona* are suppressed.

**SO ORDERED**          ENTERED: July 21, 2000

*[signature]*
HON. RONALD A. GUZMAN
**United States Judge**

---

[4] Chan testified he is from Malaysia and has been in the United States just over two years.

6